**RECEIVED**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

CLERK, U.S. DIST. COURT
WESTERN DIST. OF TENN

| | | |
|---|---|---|
| STEVEN M. WIRTH, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| v. | ] | Civil No: 2:07-CV-2038 D/P |
| | ] | |
| CON-LINK TRANSPORTATION | ] | |
| COMPANY, RANDY L. CAGLE, and | ] | |
| KIMBERLY CAGLE, | ] | |
| | ] | |
| Defendants. | ] | |

## SECOND AMENDED COMPLAINT

Plaintiff, STEVEN M. WIRTH, *pro se*, files this Complaint pursuant to 42 USC

§ 1983, seeking compensatory and punitive damages from the Defendants. Plaintiff

waives a jury trial.

## JURISDICTION

Subject matter jurisdiction is founded upon 28 U.S.C. §1331; and 42 USC §1983

wherein Congress created the right of an individual to seek damages against persons

acting under color of state law when the acts and omissions of those persons result in the

deprivation of a Constitutional right.

As a private company acting as an agent of Scott County, Missouri and Broward

County, Florida, Defendant CON LINK TRANSPORTATION COMPANY is subject to

suit pursuant to *Richardson v. McKnight*, 521 U.S. 399; 117 S. Ct. 2100; 138 L. Ed. 2d

540 (1997).

1

## VENUE

Venue is appropriate under 28 U.S.C. §1391, et. seq., as well as Tennessee Code §20-4-101(a).

## PARTIES

1. Plaintiff, Steven M. Wirth, is an individual residing at 508 Highland Drive, White House, Tennessee, 37188.

2. Defendant, CON LINK TRANSPORTATION COMPANY, is an active Tennessee corporation chartered on or about November 1, 2001, whose principle business address is 59 North Cooper Street, Memphis, Tennessee, 38104. Defendant CON LINK TRANSPORTATION COMPANY is sued in its official and individual capacities

3. The acts and omission of Defendant CON LINK TRANSPORTATION COMPANY were undertaken under color of state law.

4. The acts and omissions of Defendant CON-LINK TRANSPORTATION COMPANY were undertaken with deliberate indifference to Plaintiff's rights.

5. The acts and omissions of Defendant CON LINK TRANSPORTATION COMPANY are the proximate cause of harms and injury to Plaintiff.

6. Defendant CON LINK TRANSPORTATION is liable to Plaintiff for compensatory and punitive damages.

7. Defendant RANDY L. CAGLE is the owner of Defendant CON LINK TRANSPORTATION COMPANY. Defendant RANDY L. CAGLE is sued in his individual capacity

8. Randy L. Cagle is the registered agent for Defendant CON LINK
TRANSPORTATION COMPANY

9. Defendant RANDY L. CAGLE resides at 4268 Stillwater Cove, Memphis,
Tennessee, 38125.

10. Defendant RANDY L. CAGLE is the individual who promulgates policies,
practices and procedures for Defendant CON LINK TRANSPORTATION COMPANY.

11. Defendant RANDY L. CAGLE knew or reasonably should have know that
all policies, practices and procedures promulgated by him are required to comport with
applicable constitutional, statutory and regulatory laws, as well as contractual obligations.

12. The acts and omissions of Defendant RANDY L. CAGLE were undertaken
with deliberate indifference to Plaintiff's rights

13. The acts and omissions of Defendant RANDY L. CAGLE are the proximate
cause of harms and injuries suffered by Plaintiff.

14. Defendant RANDY L. CAGLE is liable to Plaintiff for compensatory and
punitive damages.

15. Defendant KIMBERLY CAGLE is the manager of Defendant CON LINK
TRANSPORTATION COMPANY.  Defendant KIMBERLY CAGLE is sued in her
individual capacity.

16. Defendant KIMBERLY CAGLE resides at 4268 Stillwater Cove, Memphis,
Tennessee, 38125.

17. Defendant KIMBERLY CAGLE is responsible for, *inter alia*, scheduling the
pick-up of prisoners to be transported by Defendant CON LINK TRANSPORTATION
COMPANY.

18. Defendant KIMBERLY CAGLE is responsible for implementing the policies, practices and procedures of Defendant CON LINK TRANSPORTATION COMPANY in a manner comporting with all provisions of applicable constitutional, statutory and regulatory laws, as well as all contractual obligations.

19. The acts and omissions of Defendant KIMBERLY CAGLE are the proximate cause of harms and injuries suffered by Plaintiff.

20. Defendant KIMBERLY CAGLE is liable to Plaintiff for compensatory and punitive damages.

## FACTUAL ALLEGATIONS

21. Plaintiff incorporates by reference all information set forth in paragraphs 1 through 20 above as though fully set forth herein.

22. On or about May 2, 2006, at approximately 5:00 AM, JOHN DOE #1 and JOHN DOE #2, who on information and belief were employees of Defendant CON LINK TRANSPORTATION COMPANY, took custody of Plaintiff from authorities in Stanley County, North Carolina, pursuant to a contractual arraignment between Defendant CON LINK TRANSPORTATION COMPANY and authorities in Scott County, Missouri.

23. JOHN DOE #1 is the individual personally taking Plaintiff into custody, and upon the initial contact between Plaintiff and JOHN DOE #1, Plaintiff was ordered to submit to a strip search of his person. Because Defendant CON LINK TRANSPORTATION COMPANY is a private corporation and JOHN DOE #1 was an employee of a private corporation, Plaintiff questioned JOHN DOE #1's authority to conduct a strip search. Defendant JOHN DOE #1 responded to Plaintiff's lack of

4

immediate compliance by pulling a can of pepper-spray from his uniform and threatening to spray Plaintiff. In light of what Plaintiff perceived as an immediate threat to his well-being, Plaintiff complied with JOHN DOE #1's order and submitted to being strip searched.

24. After completing the strip search of Plaintiff, JOHN DOE #1 ordered Plaintiff to put on an orange jump-suit permeated with the smell of diesel fuel that was several sizes too small for Plaintiff. Plaintiff was not permitted any underwear or socks. JOHN DOE #1 then handcuffed Plaintiff to a belly chain, severely restricting Plaintiff's range of motion. Additionally, JOHN DOE #1 hobbled Plaintiff with shackles placed around Plaintiff's bare ankles.

25. After placing restraints upon Plaintiff, JOHN DOE #1 informed Plaintiff that if Plaintiff attempted to escape or in any way tampered with the restraints Defendant JOHN DOE #1 would shoot Plaintiff and leave him for the dogs.

26. JOHN DOE #1 thereafter produced documents for Plaintiff's signature. When Plaintiff sought to read the documents before signing them, JOHN DOE #1 again threatened to mace Plaintiff and informed Plaintiff that any continued questioning of JOHN DOE #1's orders or failure to immediately comply with any and all orders given Plaintiff by JOHN DOE #1 would subject Plaintiff to immediate consequences, including the use of pepper-spray against Plaintiff.

27. Plaintiff was thereafter placed into the back of a fifteen (15) passenger van containing a female prisoner, who was locked inside a separate area of the van.

28. JOHN DOE #1 and JOHN DOE #2 thereafter began driving and after approximately two hours, the van was pulled into a Ford dealership in West Virginia for

repair. Both Plaintiff and the other occupant of the van were required to sit in the public waiting area in full restraints for several hours while the transport vehicle underwent repairs.

29.  Upon completion of  major repairs to the transport vehicle Plaintiff and the other prisoner were placed again into separate secured compartments of the van and JOHN DOE #1 and JOHN DOE #2 embarked upon a journey covering thousands of miles. JOHN DOE #1 and JOHN DOE #2 frequently drove in excess of the posted speed limits and on at least one occasion came perilously close to a collision with a tractor-trailer.

30.  From approximately 5:00 AM on May 2, 2006, until approximately 2:00 AM on May 5, 2006, Plaintiff remained fully restrained, confined with other numerous others in the secured area of the transport vehicle, stopping at irregular intervals to pickup or drop-off numerous other prisoners.

31.  From approximately 5:00 AM on May 2, 2006, until approximately 2:00 AM on May 5, 2006, Plaintiff received less than the minimal daily nutritional requirements of food and water.

32.  From approximately 5:00 AM on May 2, 2006, until approximately 2:00AM on May 5, 2006, Plaintiff was permitted to utilize restroom facilities twice daily and only then to urinate.  Plaintiff was informed that bowel movements required too much time and that it was policy not to permit prisoners to "shit".

33.  From approximately 5:00 AM on May 2, 2006, until approximately 2:00 AM on May 5, 2006, Plaintiff was denied any opportunity for personal hygiene.

6

34. During the course of his transport by JOHN DOE #1 and JOHN DOE #2, Plaintiff witnessed the use of pepper-spray against at least one other prisoner. Said prisoner was fully restrained at the time pepper-spray was utilized as punishment for what John Doe #1 stated was her failure to follow his orders.

35. During the course of his transport by JOHN DOE #1 and JOHN DOE #2, JOHN DOE #2 informed Plaintiff that Defendant CON LINK TRANSPORTATION COMPANY encouraged its transport employees to set the cruise control of the transport vehicle to at least 85 miles per hour.

36. During the course of his transport from North Carolina to Missouri by JOHN DOE #1 and JOHN DOE #2, Plaintiff was transported as far north as the upper peninsula of Michigan.

37. During the course of his transport by JOHN DOE #1 and JOHN DOE #2, the gender make-up of the transport vehicle's population became such that female prisoners were placed into the same area of the vehicle as Plaintiff.

38. Upon Plaintiff's discharge from the custody of Defendant CON LINK TRANSPORTATION COMPANY in Benton, Missouri, Plaintiff had been in full restraints for more than ninety hours. Plaintiff was not housed in any facility during any period of time during his transportation from North Carolina to Missouri but was required to remain in the secured area of the van throughout the entire ninety plus hours of transport time, with only brief periods outside the transport van when he was permitted to quickly utilize restroom facilities.

39. The distance from Albemarle, North Carolina to Benton, Missouri is approximately 680 miles, with an approximate travel time of 12 hours.

7

40. The Scott County, Missouri, charge was subsequently dismissed and Plaintiff was transferred by local authorities to Cape Girardeau County jail in Jackson, Missouri, where a Governor's warrant from the State of Florida was lodged against him  Plaintiff remained in the custody of Cape Girardeau County, Missouri authorities until July 10, 2006.

41. On July 10, 2006, at approximately 2:30 PM, Defendant CON-LINK TRANSPORTATION COMPANY, through its employees JOHN DOE #3 and Defendant JOHN DOE #4, took custody of Plaintiff pursuant to a contractual agreement with authorities in Broward County, Florida.

42. Defendant JOHN DOE #4 was the individual taking Plaintiff into custody on July 10, 2006.  Upon the initial contact between Plaintiff and JOHN DOE #4, JOHN DOE #4 ordered Plaintiff to submit to a strip search of Plaintiff's person.  Just as on May 2, 2006, Plaintiff questioned the authority of a private company to subject Plaintiff to a strip search of his person.  Defendant JOHN DOE #4 thereafter provided Plaintiff an orange jump-suit permeated with the smell of diesel fuel that was several sizes too small for Plaintiff.  Plaintiff was not permitted any underwear or socks.  JOHN DOE #4 then handcuffed Plaintiff to a belly-chain, severely restricting Plaintiff's range of motion.  Additionally JOHN DOE #4 hobbled Plaintiff with shackles placed around Plaintiff's bare ankles.

43. JOHN DOE #4 thereafter produced documents for Plaintiff's signature.  Plaintiff questioned the appropriateness of requiring him to sign one of the documents, a document requiring Plaintiff to agree that CON LINK TRANSPORTATION COMPANY and its employees treated Plaintiff fairly while being transported from

8

Missouri to Florida. Specifically, Plaintiff recounted to JOHN DOE #4 the maltreatment

he had previously experienced at the hands of Defendant CON LINK

TRANSPORTATION COMPANY and JOHN DOE #1 and JOHN DOE #2. Plaintiff

questioned the justification of requiring prisoners to sign an acknowledgement of fair

treatment prior to the commencement of the journey. JOHN DOE #4 became belligerent

with Plaintiff and instructed Plaintiff to exit the Cape Girardeau County jail facility.

44. Plaintiff was thereafter escorted by JOHN DOE #4 to the sally-port of the

Cape Girardeau County jail facility. Thereafter JOHN DOE #4 informed JOHN DOE #3

that Plaintiff refused to sign the waiver acknowledging he had been treated fairly.[1] A

conversation ensued between JOHN DOE #3 and JOHN DOE #4. The other prisoners

already in the back of the transport vehicle were ordered off the van and escorted by

JOHN DOE #4 into the Cape Girardeau County jail facility, ostensibly to provide them

an opportunity to utilize restroom facilities.

45. As soon as the other prisoners exited the sally-port of the Cape Girardeau

County jail facility, JOHN DOE #3 began cursing, calling Plaintiff a "cock-sucker", an

"ass-hole" and making other derogatory comments. During his tirade JOHN DOE #3

was no more than six inches away from Plaintiff's face and Plaintiff was struck in the

face by spittle coming from the mouth of JOHN DOE #3. When Plaintiff continued to

refuse to sign a waiver acknowledging that he had been treated fairly by CON LINK

TRANSPORTATION COMPANY, as well as JOHN DOE #3 and JOHN DOE #4,

---

[1] It is telling that CON LINK TRANSPORTATION COMPANY requires this form to be
signed at the time the prisoner is taken into its custody. Moreover, as will be
demonstrated through discovery, the form is designed so that CON LINK
TRANSPORTATION COMPANY employees can cover the area of the form containing
the waiver of liability.

JOHN DOE #3 ordered plaintiff to enter the transport van and sit in the back left corner of the passenger's compartment.

46.  JOHN DOE #3 thereafter placed a telephone call via a cell phone. Plaintiff was able to overhear JOHN DOE #3's part of the conversation. On information and belief, JOHN DOE #3 placed a call to the offices of Defendant CON LINK TRANSPORTATION COMPANY, and stated into the phone that he, (JOHN DOE #3), was in Jackson, Missouri and had a "fucking ass-hole who won't sign the waiver". JOHN DOE #3 then asked the person on the other end of the conversation, "Is your dad is around?"[2]

47.  On information and belief, the individual described above as "your dad" is Defendant RANDY L. CAGLE.

48.  JOHN DOE #3 concluded the telephone conversation and attempted to coerce Plaintiff into signing the document by stating, "the boss said if you don't sign the form then you don't exist while on this van. You ain't going to eat, piss or breathe".

49.  Soon thereafter JOHN DOE #4 returned with the other prisoners. Once the other prisoners were loaded into the transportation vehicle JOHN DOE #3 instructed the other prisoners not to speak or even look at Plaintiff and that if they did they too would be subjected to the same consequences, i.e., the denial of food, water and the use of restroom facilities.

50.  JOHN DOE #3 and Defendant JOHN DOE #4 thereafter embarked upon a journey covering thousands of miles. JOHN DOE #3 and JOHN DOE #4 frequently drove in excess of the posted speed limits and on one occasion while traveling at a very

---

[2] On information and belief, John Doe #3 initially spoke with Randy L. Cagle, Jr., the son of Defendant RANDY L. CAGLE.

10

high rate of speed clipped the left lane guard-rail sending the transport vehicle veering into the right lane, barely missing a passenger vehicle.

51. During the course of Plaintiff's transport by JOHN DOE #3 and JOHN DOE #4, police authorities stopped the vehicle on at least three occasions for traveling in excess of the posted speed limit.

52. During the course of Plaintiff's transport by JOHN DOE #3 and JOHN DOE #4, JOHN DOE #3 incessantly smoked cigarettes in the front compartment of the transport van, permeating the air in the prisoners' compartment with second-hand smoke.

53. Because Plaintiff did not sign the waiver described in paragraph 30 above, Plaintiff was not permitted to leave the transport vehicle for approximately 40 hours, traveling roundabout from Jackson, Missouri to Buffalo, New York. It was only when Plaintiff threatened to urinate in the floor of the transport vehicle that JOHN DOE #4 sought the permission of JOHN DOE #3 to permit Plaintiff to utilize the restroom facilities in the Buffalo, New York jail facility.

54. During the course of Plaintiff's transport by JOHN DOE #3 and JOHN DOE #4, JOHN DOE #3 systematically abused Plaintiff verbally and threatened repeatedly to mace Plaintiff. JOHN DOE #3 implemented a procedure whereby when the other prisoners were fed Plaintiff was required to exit the transport van and stand outside to prevent other prisoners from sharing with Plaintiff the meager portions provided to them.

55. On July 13, 2006, at approximately 1:00 PM, JOHN DOE #3 and JOHN DOE #4 pulled into a McDonalds restaurant in Fort Lauderdale, Florida. Plaintiff was ordered by JOHN DOE #3 to exit the vehicle while JOHN DOE #4 entered the restaurant to purchase food for the prisoners in the transport vehicle. While Plaintiff was outside

11

the vehicle JOHN DOE #3 attempted to engage Plaintiff in a conversation, explaining that he (JOHN DOE #3) was under severe pressure and that nothing that had happened during the course of Plaintiff's transport was personal. Defendant JOHN DOE #3 then asked Plaintiff to sign the waiver described in paragraph 43 above and that if Plaintiff would sign the form, JOHN DOE #3 would personally buy Plaintiff anything he wanted from the McDonalds menu.

56. Plaintiff continued to refuse to sign the form and JOHN DOE #3 began another verbal tirade directed at Plaintiff, pulling a can of pepper spray from his hip and pointing the can at Plaintiff's face. JOHN DOE #4 then appeared from the McDonalds restaurant with several bags of food. JOHN DOE #3 holstered his can of pepper spray, took a sandwich from the bag of food delivered by JOHN DOE #4, and ground the sandwich under the heel of his foot. JOHN DOE #3 then told Plaintiff to eat the sandwich he, (JOHN DOE #3), had stomped into the ground. Plaintiff refused that order and was placed back into the transport van after the other prisoners had finished eating.

57. On July 13, 2006, at approximately 2:00 PM, JOHN DOE #3 and JOHN DOE #4 delivered Plaintiff, as well as numerous other prisoners, to the intake area of the Broward County, Florida jail. Plaintiff was seen by a nurse who took Plaintiff's blood sugar level. Upon reading Plaintiff's blood sugar level, Plaintiff was immediately taken inside the jail facility and provided with food and juice. While in the intake area JOHN DOE #3 admitted in the presence of the nurse that he had not provided Plaintiff with any food for four days on the instructions of his boss.

### FIRST CAUSE OF ACTION

### THE VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT RIGHTS

58. Plaintiff incorporates by reference all information set forth in paragraphs 1 through 57 above as though fully set forth herein.

59. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to strip search some prisoners prior to placing them in full restraints.

60. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 59 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the due process rights of Plaintiff.

61. Plaintiff alleges that the strip searches conducted by employees of Defendant CON-LINK TRANSPORTATION COMPANY are, as a matter of law, impermissible because Defendant CON LINK TRANSPORTATION COMPANY is a private corporation and that the strip searches were not in furtherance of a justifiable security concern. Plaintiff was picked-up from secure jail facilities and that the manner in which the strip searches were conducted, and the purposes for which they were conducted, constituted the wanton infliction of psychological pain as they were intended, *inter alia*, to intimidate and subjugate Plaintiff prior to being taken into the custody of Defendant CON-LINK TRANSPORTATION COMPANY.

13

62. Plaintiff alleges that the strip searches of his person on May 9, 2007 and July 10, 2006, by employees of Defendant, CON LINK TRANSPORTATION COMPANY, constituted an invasion of privacy and a violation of due process.

63. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to place prisoners in its custody into full restraints for periods of time in excess of any constitutionally permissible length of time.

64. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 63 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the due process rights of Plaintiff.

65. Plaintiff alleges that Defendant KIMBERLY CAGLE is the individual scheduling the pick up of Plaintiff by Defendant CON LINK TRANSPORTATION COMPANY in a manner that required him to be placed in full restraints for a period of time in excess of any constitutionally permissible length of time

66. Defendant KIMBERLY CAGLE scheduled Plaintiff's transport by Defendant CON LINK TRANSPORTATION COMPANY with deliberate indifference to Plaintiff's due process rights.

67. The acts and omissions of Defendant KIMBERLY CAGLE are the proximate cause of harm and injury to Plaintiff.

68. Plaintiff alleges that Defendant CON LINK TRANSPORTATION COMPANY, Defendant RANDY L. CAGLE, and/or Defendant KIMBERLY CAGLE scheduled Plaintiff's transportation, or permitted Plaintiff's transportation to be scheduled, in a manner designed to enhance the profits of Defendant CON LINK

14

TRANSPORTATION COMPANY with deliberate indifference to the due process rights of Plaintiff.

69. Plaintiff alleges that the uninterrupted placement of full restraints on Plaintiff for several days by Defendant CON LINK TRANSPORTATION COMPANY and its employees, constituted a wanton infliction of physical pain and that these Defendants knew or reasonably should have known that their acts and omissions would result in harm and injury to Plaintiff.

70. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to deny prisoners in its custody the opportunity to shower, brush their teeth, or attend to other personal hygiene matters for protracted periods that exceed any constitutionally permissible time and that such denial violated Plaintiff's due process rights.

71. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 70 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the due process rights of Plaintiff.

72. Plaintiff alleges that Defendant KIMBERLY CAGLE is the individual scheduling the pick up of Plaintiff by Defendant CON LINK TRANSPORTATION COMPANY in a manner that denied him an opportunity to shower, bath or attend to other personal hygiene matters for a period of time in excess of any constitutionally permissible length of time

73. Plaintiff alleges that requiring him to travel for days at a time without opportunity to shower, brush his teeth, or attend to other personal hygiene matters constitutes a violation of due process.[3]

74. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to transport prisoners in such a manner as to deny prisoners in its custody an adequate opportunity to sleep for days at a time.

75. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 74 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the rights of Plaintiff.

76. Plaintiff alleges that Defendant KIMBERLY CAGLE is the individual scheduling the pick up of Plaintiff by Defendant CON LINK TRANSPORTATION COMPANY in a manner that denied him an adequate opportunity for sleep for a period of time in excess of any constitutionally permissible length of time

77. Plaintiff alleges that subjecting him to days of travel, without an adequate opportunity to sleep, is a violation of due process, and that the Defendants knew or reasonably should have known that their acts and omissions were contrary to clearly established law.

---

[3] The Constitutional prohibition against cruel and unusual punishment is governed under the Eighth Amendment. Because Plaintiff was a pre-trial detainee while in the custody of CON LINK TRANSPORTATION COMPANY his claims are properly reviewed under the Fourteenth Amendment's due process provisions. (See, e.g. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979), " Pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, which prohibits them from being "punished prior to an adjudication of guilt in accordance with due process of law." The standard of review is the same whether viewed under Eighth Amendment or Fourteenth Amendment scrutiny. , *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1024 , n.5 (11th Cir. 2001) (en banc) (applying the Eighth Amendment deliberate indifference test to a pre-trial detainee's Fourteenth Amendment due process claim).

78. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to transport prisoners in an unsafe manner by encouraging its employees to operate its transportation vehicles in excess of the posted speed limits.

79. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 78 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the rights of Plaintiff, and with reckless disregard to the safety of Plaintiff.

80. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to subject prisoners to unsafe conditions by permitting its employees to drive and operate its transport vehicles contrary to the rules and regulations governing the number of hours a commercial driver can lawfully be on-duty, and that such acts or omissions constituted deliberate indifference to the safety and well-being of Plaintiff.

81. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 80 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the rights of Plaintiff.

82. Plaintiff alleges that subjecting him to extended periods of traveling at a high rate of speed, especially when coupled with the fatigue of JOHN DOE #1, JOHN DOE #2, JOHN DOE #3, and JOHN DOE #4 caused by their extended periods of uninterrupted on-duty status subjected Plaintiff to potential serious harm and injury and is a violation of due process and constituted a wonton and deliberate indifference to Plaintiff's safety and well-being.

17

83. Plaintiff alleges that it is the custom, practice and policy of Defendant CON LINK TRANSPORTATION COMPANY to deny prisoners in its custody the minimal daily nutritional requirements and that this denial is intended to enhance the profits of Defendant CON LINK TRANSPORTATION COMPANY, is a violation of due process, and violated the terms of the contracts entered into by Defendant CON LINK TRANSPORTATION COMPANY with Scott County, Missouri and Broward County, Florida, for the transportation of Plaintiff.

84. Plaintiff alleges that Defendant RANDY L. CAGLE is the individual promulgating the policy described in paragraph 83 above and that Defendant RANDY L. CAGLE formulated said policy with deliberate indifference to the rights of Plaintiff.

85. Plaintiff alleges that Defendant CON-LINK TRANSPORTATION COMPANY provided him less than his minimal daily nutritional requirements from May 2, 2006, to May 10, 2006, and this denial is a violation of due process.

86. Plaintiff alleges that Defendant CON-LINK TRANSPORTATION COMPANY provided him less than his minimal daily nutritional requirements from July 10, 2006, to July 13, 2006, by denying Plaintiff any food or water, and that this denial of food was a violation of due process of law.

87. Plaintiff alleges that individually and cumulatively, the allegations set forth in paragraphs 59 through 86 constitute a violation of due process.

## SECOND CAUSE OF ACTION

## THE VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS

88.  Plaintiff incorporates by reference all information set forth in paragraphs 1 through 87 above as though fully set forth herein.

89.  Plaintiff alleges that the acts and omissions of Defendant CON LINK TRANSPORTATION COMPANY and Defendant RANDY L. CAGLE as set forth in paragraph 86 above were undertaken to chill Plaintiff's right of access to the court.

90.  Plaintiff alleges that the acts and omissions of Defendant CON LINK TRANSPORTATION COMPANY and Defendant RANDY L. CAGLE as set forth in paragraph 86 above were undertaken contrary to clearly established law.

91.  Plaintiff alleges that the acts and omissions of Defendant CON LINK TRANSPORTATION COMPANY and Defendant RANDY L. CAGLE as set forth in paragraph 86 above were undertaken deliberately and with wanton disregard of Plaintiff's First Amendment rights.

92.  Plaintiff alleges that acts and omissions by Defendant CON-LINK TRANSPORTATION COMPANY and Defendant RANDY L. CAGLE set forth in paragraphs 86 were undertaken in an attempt to thwart Plaintiff's ability to sue Defendants by coercing Plaintiff to sign a waiver of liability as to the treatment he received while in the custody of Defendant CON LINK TRANSPORTATION COMPANY.

93.  Plaintiff alleges that acts and omissions by Defendant CON-LINK TRANSPORTATION COMPANY and Defendant RANDY L. CAGLE set forth in paragraphs 86 are the proximate cause of harm and injury to Plaintiff.

94. Plaintiff alleges that acts and omissions by Defendant CON-LINK

TRANSPORTATION COMPANY and Defendant RANDY L. CAGLE set forth in

paragraphs 86 were undertaken in retaliation of Plaintiff's conduct protected by the First

Amendment to the United States Constitution.

### RELIEF DEMANDED

WHEREFORE, Plaintiff prays this Court to award compensatory damages against

Defendants in an amount sufficient to compensate Plaintiff for the harms and injuries

suffered by Plaintiff through the acts and omissions of Defendants.

FURTHER, Plaintiff prays this Court to award punitive damages against

Defendants in an amount sufficient to punish the acts and omissions of Defendants

leading to the violations of Plaintiff's constitutional, statutory and contractual rights as

well as in an amount sufficient to deter Defendants from such future conduct.

FINALLY, Plaintiff prays this Court for further relief that may be deemed

appropriate, including the taxing of costs of this action against Defendants.

### VERIFICATION

Pursuant to the provisions of 28 U.S.C. §1746 Plaintiff states that the information

set forth herein is accurate to the best of his knowledge and beliefs.

Respectfully submitted,

Steven M. Wirth
Plaintiff, pro se
P.O. Box 951
White House, TN 37188

20

CLERK,:U.S. DIST. COURT
WESTERN DIST. OF TENN

FROM:   Steven M. Wirth
        P.O. Box 951
        White HOuse, TN 37188

    TO:     Clerk of the Court
            167 North Main Street
            Room 242
            Memphis, TN 38103



UNITED STATES
POSTAL SERVICE

0000

HMLUNI        WHTE HOUSE, TN
$1.35         APR 27 '08
              00050493-02
              38103